USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 94-2154 UNITED STATES, Appellee, v. MICHAEL T. CHAPMAN, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Peter B. Krupp, Assistant Federal Public Defender, for appellant. ______________ Jeanne M. Kempthorne, Assistant United States Attorney, with whom ____________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ July 25, 1995 ____________________ STAHL, Circuit Judge. Appellant Michael T. Chapman STAHL, Circuit Judge. _____________ pled guilty to one count of transporting child pornography in interstate commerce in violation of 18 U.S.C. 2252(a)(1) and was sentenced to thirty-three months incarceration. Chapman appeals his sentence, challenging the district court's application of a five-level "pattern of activity" enhancement under U.S.S.G. 2G2.2(b)(4).1 We vacate the sentence imposed by the district court and remand for resentencing. I. I. __ From November 1993 until at least January 1994, Chapman, of Southbridge, Massachusetts, subscribed to the America On-Line (AOL) computer information network. During that time, Chapman communicated via computer and telephone with an AOL subscriber in Michigan (a cooperating witness referred to by the government as "Dan") about Chapman's sexual interest in children. Chapman told Dan about having had sexual relations with children as young as seven years, and discussed with Dan the possibility of abducting a young girl, bringing her to Michigan where both men would have sex with her, and then killing her. Chapman also told Dan that he possessed a "snuff film" depicting the rape and murder of a ten-year-old girl, as well as other child pornography.  ____________________ 1. All references to the Sentencing Guidelines, unless otherwise noted, are to the 1993 Guidelines Manual. -2- 2 On December 2, 1993, Chapman sent Dan three photographs via the computer network, each with a different file designation. Two of the pictures depicted nude or partially nude girls, while the third depicted a young girl engaged in sex with a man. A nurse employed by the FBI told investigators that in her opinion, the girl depicted in the third photograph was less than ten years old. On December 29, 1993, Chapman told Dan that he was going to scan and send to Dan a photograph of Chapman having anal intercourse with a twelve-year-old girl. Chapman then sent to Dan over the computer network a photograph depicting a man2 having anal intercourse with a young female who an FBI nurse later stated appeared to be under eighteen years old. A search of Chapman's residence and computer on February 16, 1994, pursuant to a warrant obtained by the FBI, turned up no "snuff films," other child pornography or scanning equipment. Chapman told investigators that his statements to Dan about sexually abusing children and possessing a snuff film were not true but were simply fantasy. Investigators were unable to verify that Chapman had actually engaged in the sexual acts with children that he had described to Dan. Chapman admitted, however, that he had exposed himself to minors and that he had shown a  ____________________ 2. The photograph showed the man's lower torso but not his face. -3- 3 pornographic film to children, although the record does not make clear when these events occurred. On March 22, 1994, Chapman was indicted in the Eastern District of Michigan on four counts, each charging interstate computer transmission of child pornography in violation of 18 U.S.C. 2252(a)(1). On June 17, 1994, Chapman pleaded guilty in the District of Massachusetts to Count One of the indictment, which involved the December 2, 1993, transmission of the photograph depicting a ten-year-old girl in a sexually explicit act. Following Chapman's plea, the U.S. Probation Department prepared Chapman's presentence report (the "PSR"). In addition to the information set forth above, the PSR stated that Chapman told investigators that he had obtained about fifty pornographic images over the computer network, and had engaged in sexually graphic correspondence with hundreds of computer network subscribers over the preceding two months. Chapman objected to these statements in the PSR, maintaining that he had simply told investigators that he had access to fifty pornographic images over the computer network ______ and that he had seen hundreds of names listed on AOL and other bulletin boards of people interested in sexually graphic correspondence. Chapman also claimed in response to the PSR that he had never "downloaded" the photographs sent to Dan, that in fact he had never viewed them himself, and -4- 4 that the December 29 photograph depicted neither him nor a minor. The PSR also indicated that Chapman had prior convictions in Massachusetts for rape and for lewd and lascivious behavior arising from acts involving young children. In addition, in 1981, Chapman had admitted to facts warranting a finding of guilt on a charge of indecent exposure; that charge was continued with supervision and eventually dismissed. Furthermore, the PSR stated that there was credible evidence that Chapman had made a series of obscene phone calls in 1988 to the twelve-year-old daughter of one of his friends; Chapman disputed this allegation. At Chapman's sentencing hearing on September 27, 1994, the only legal issue in dispute was the application of U.S.S.G. 2G2.2(b)(4), which, under the category of "Specific Offense Characteristics," states: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." The PSR recommended the application of the pattern- of-activity enhancement to Chapman because he had transmitted three sexually explicit photographs of minors on December 2 and a fourth on December 29. The district court agreed and applied the enhancement to Chapman, stating that it based its decision on "[t]he entire record, the prior record, the other conduct, the 1988 incident, the entire record that I have -5- 5 before me, with the exception of [the December 29 photo], which I accept [defense counsel's] argument on." The court imposed a sentence of thirty-three months, the minimum under the applicable guideline range.3 This appeal followed. II. II. ___ Chapman argues that the district court erred in applying 2G2.2(b)(4) to him because the guideline does not permit consideration of past sexual abuse or exploitation that is unrelated to the offense of conviction, and because the transmission of child pornography by computer is not "sexual abuse or exploitation" within the meaning of the guideline. Thus, Chapman challenges the district court's interpretation of the meaning and scope of the guideline, which we review de novo. United States v. Powell, 50 F.3d _______ _____________ ______ 94, 102 (1st Cir. 1995); United States v. Thompson, 32 F.3d _____________ ________ 1, 4 (1st Cir. 1994). We first consider whether the transmission of child pornography by computer may constitute a "pattern of activity involving the sexual abuse or exploitation of a minor" under  ____________________ 3. The district court arrived at Chapman's sentence in the following manner: The Base Offense Level for Chapman's offense was 15. He received a two-level increase under  2G2.2(b)(1) because one of the photographs he sent involved a prepubescent minor, and a five-level increase under  2G2.2(b)(4). The court subtracted three levels for acceptance of responsibility pursuant to 3E1.1(b), bringing Chapman's adjusted offense level to 19. Chapman's criminal history placed him in category II, making his applicable guideline sentencing range thirty-three to forty-one months. -6- 6 2G2.2(b)(4). The commentary to 2G2.2 explains that the quoted phrase "means any combination of two or more separate instances of the sexual abuse or the sexual exploitation of a minor, whether involving the same or different victims." U.S.S.G. 2G2.2, comment. (n.4). "Sexual abuse" and "sexual exploitation," however, are not defined in either the relevant sentencing guidelines or their corresponding statutory provisions. The government does not argue that trafficking in child pornography, by itself, is sexual abuse; the question for us to decide is whether it may be considered sexual exploitation of a minor. The most nearly relevant dictionary definition of "exploitation" is "an unjust or improper use of another person for one's own profit or advantage." Webster's Third _______________ New International Dictionary (1986). In a broad sense, ______________________________ anyone who chooses to look at child pornography has "improperly used" the child depicted in the materials and thus has exploited that child -- a trafficker in such materials, whether recipient or sender, all the more so. We do not think that Congress,4 or the Sentencing Commission,  ____________________ 4. The Sentencing Commission added subsection (b)(4) and application note 4 to 2G2.2 in 1991 pursuant to a congressional mandate. See U.S.S.G. App. C., Amendment 435; ___ Treasury, Postal Service and General Government Appropriations Act of 1992, Pub. L. No. 102-141, 632. The legislative history sheds little, if any, light on what Congress intended the pattern-of-activity enhancement to mean. Senators Helms and Thurmond, the amendment's sponsors, focused on the need for higher base offense levels for -7- 7 intended for the word "exploitation" in 2G2.2(b)(4) to carry this all-encompassing meaning. We reach this conclusion based on the interaction of subsection (b)(4) with other guidelines provisions, and on the Sentencing Commission's use of "exploitation" in other contexts. The first clue to the meaning of the phrase "sexual exploitation" is provided by the disparate titles of the guidelines punishing violations of 18 U.S.C. 2251-52. See ___ Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 9 (1st ________ __________________________ Cir. 1991) (titles may aid in construing any ambiguities in a statute). The title of U.S.S.G. 2G2.1, applicable to crimes related to the production of child pornography, is: __________ Sexually Exploiting a Minor by Production ___________________________ of Sexually Explicit Visual or Printed Material: Custodian Permitting Minor to Engage in Sexually Explicit Conduct: Advertisement for Minors to Engage in Production (emphasis added). The title of 2G2.2 is: Trafficking in Material Involving the ________________________ Sexual Exploitation of a Minor; ______________________ Receiving, Transporting, Shipping, or  ____________________ purveyors and possessors of child pornography (the base offense levels for possessors and recipients of child pornography were, respectively, 10 and 13 at the time), and on the link between child pornography and sexual abuse. See ___ 137 Cong. Rec. S10322-33 (daily ed. July 18, 1991) (statements of Senators Helms and Thurmond). In relevant part, section 632 of the Act ordered the Sentencing Commission to amend 2G2.2 "to provide a base offense level of not less than 15 and to provide at least a 5 level increase for offenders who have engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." -8- 8 Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic. (emphasis added). The title of 2G2.1 clearly indicates that the acts to which that guideline applies are themselves ______________ sexual exploitation of a minor; the title of 2G2.2 suggests that while the material "involves" sexual exploitation of a ________ minor, trafficking in such material does not. If subsection (b)(4) of 2G2.2 were meant to include the trafficking offenses punishable by that very same guideline, one would expect that the Sentencing Commission -- either in subsection (b)(4) itself or in application note 4 -- would have used language that more obviously included those offenses. For example, application note 4 could have defined "pattern of activity" as "any combination of two or more acts involving the sexual abuse or sexual exploitation of a minor, or the ______ trafficking in, or transportation or receipt of, material _____________________________________________________________ involving such exploitation." Cf. U.S.S.G. 2G2.4(b)(2) ____________________________ ___ (increasing offense level of defendants convicted of possession of child pornography "if the offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor"). By limiting "pattern of activity" to "instances of the sexual abuse or the sexual exploitation of a minor," in the context of a -9- 9 guideline that by its own terms differentiates itself from _________________ another guideline that does explicitly apply to the sexual ____ exploitation of minors, the Sentencing Commission has provided at least a strong initial clue that it does not understand "exploitation" to include trafficking offenses. The relevant statutory provisions make a similar distinction. The title of 18 U.S.C. 2251, which applies to persons directly involved in the production or advertisement of child pornography, is "Sexual exploitation of children," while 18 U.S.C. 2252 is titled "Certain activities relating to material involving the sexual exploitation of minors." Thus, Congress apparently intended to draw a distinction between those directly engaged in sexually exploiting minors and those who were engaged in "certain activities related to material involving" such exploitation. The government argues that if we are going to look to titles in interpreting the guideline, then we should look to the title of Chapter 110 of Title 18 of the U.S. Code, in which all of the relevant child pornography statutes are grouped -- "Sexual Exploitation and Other Abuse of Children" -- or to the heading of Part 2G2 of the Guidelines, under which both 2G2.1 and 2G2.2 are grouped -- "Sexual Exploitation of a Minor." These broad headings, the government argues, suggest that the term "sexual exploitation" has a broader meaning than simply those -10- 10 activities described in 18 U.S.C. 2251 or U.S.S.G. 2G2.1. We agree that there are some activities not described in those provisions that may be considered sexual exploitation for purposes of 2G2.2(b)(4); we do not agree, however, that ___ any activity subsumed within Chapter 110, including ___ trafficking, necessarily constitutes sexual exploitation of a minor. For example, the statute prescribing record-keeping requirements for the producers of sexually explicit material, 18 U.S.C. 2257, is intended to protect minors but does not _______ require any involvement with minors for its violation. Yet it is placed within Chapter 110 of Title 18, and its corresponding guideline, 2G2.5, is placed under the broader heading of "Sexual Exploitation of a Minor." By the government's reasoning, violations of 2257 would constitute "sexual exploitation of a minor" for purposes of  2G2.2(b)(4) even though the violator of that statute might never have had any involvement with children, directly or indirectly. To be sure, the use of titles has its limits in statutory interpretation,5 and we do not rely exclusively on  ____________________ 5. We recognize, for instance, that neither the title of 18 U.S.C. 12251A ("Selling or buying of children") nor the title of Guidelines 2G2.3 ("Selling or Buying of Children for Use in the Production of Pornography") expressly states that the acts addressed by those provisions constitute the sexual exploitation of a minor. We would be loath to say, however, that the buying or selling of children for sexual purposes -- whether or not for use in the production of child pornography -- could not be considered part of a pattern of -11- 11 titles to interpret the provision at issue here. Indeed, were there no other indicators of the Commission's intent, we might be inclined to agree with the government. But there are other indicators, and we find them to be dispositive. Direct evidence that the Sentencing Commission differentiates between sexual exploitation of a minor and trafficking in materials depicting such exploitation is provided by Amendment 372 to the Guidelines. That amendment inserted a new guideline, 2G2.4, to address offenses involving the receipt or possession of child pornography, as distinguished from the trafficking offenses covered by  2G2.2.6 The new guideline contained, and still contains, cross references to both 2G2.1 and 2G2.2. See U.S.S.G.  ___ 2G2.4(c)(1)-(2). The Commission explained: Offenses involving receipt or transportation of [child pornography] for the purpose of trafficking are referenced to 2G2.2 on the basis of the underlying conduct (subsection (c)(2)). Similarly, offenses in which the underlying conduct _________________________________________ is more appropriately addressed as sexual _________________________________________ exploitation of a minor are referenced to _________________________________________ that guideline (subsection (c)(1)). ______________ U.S.S.G. App. C., Amendment 372 (emphasis added). "That guideline" referred to in the quoted passage's last sentence is 2G2.1; the Commission could not have been much more  ____________________ activity of sexual exploitation. 6. Receipt offenses are now covered by 2G2.2, and 2G2.4 applies only to possession offenses. -12- 12 clear in distinguishing "trafficking" offenses from those "more appropriately addressed as sexual exploitation of a minor." Yet, the government argues that we should now ascribe to the Commission an intention to include trafficking _______ offenses within the meaning of sexual exploitation for purposes of 2G2.2(b)(4), even though the Commission has clearly differentiated the two on a previous occasion. We ______________ are unable to find any clear evidence that the Commission in drafting subsection (b)(4) intended to abandon its prior differentiation, and we therefore will not ascribe to it any such motive. Application note 5 to 2G2.2 delivers the defining answer to the government's argument. It states: If the defendant sexually exploited or abused a minor at any time, whether or not such sexual abuse occurred during the course of the offense, an upward departure may be warranted. In determining the extent of such a departure, the court should take into consideration the offense levels provided in 2A3.1, 2A3.2, and 2A3.4 most commensurate with the defendant's conduct, as well as whether the defendant has received an enhancement under subsection (b)(4) on account of such conduct. If we were to adopt the government's argument that the computer transmission of child pornography is sexual exploitation, then the first sentence of this note would mean that a court may depart upward from the guideline sentencing range for the very same act of "exploitation" -- i.e., the ___________________________________ -13- 13 transmission of a photograph -- that led to the conviction.7 The Commission might as well draft a sentencing guideline applicable to bank robberies, and then state in an application note that "if the defendant robbed a bank at any time, an upward departure may be warranted." This is not how the guidelines are meant to operate; departures are permitted only if "an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described." 18 U.S.C. 3553(b). Yet the application note says nothing about an aggravating circumstance; if trafficking is sexual exploitation, then trafficking alone, without any aggravating _______ circumstances, permits a judge to depart upward. This makes no sense: An offense specifically punishable under the guideline cannot at the same time be "an aggravating . . .  ____________________ 7. The Commission inserted the words "exploited or" in the first sentence of application note 5 in 1991, at the same time it added subsection (b)(4) to the guideline. See ___ U.S.S.G. App. C., Amendment 435 (effective Nov. 27, 1991). It did not amend the second clause of that sentence ("whether ___ or not such sexual abuse . . . "), nor did it insert in the _________________ following sentence a reference to the guideline applicable to sexual exploitation. One might argue that the Commission omitted any such reference intentionally, intending for sexual exploitation to include more crimes than those listed ____ in 2G2.1. We do not believe, however, that the Commission intended to open the door for departures based on any ___ activity that might conceivably be labeled sexual exploitation; it had something more specific in mind. Our best estimate of what "something more specific" encompasses is guided by the Commission's past usage of the term. -14- 14 circumstance . . . not adequately taken into consideration" by the Commission; indeed, if the offense may also, by itself, warrant an upward departure, then the guideline serves no useful purpose. Thus, we must conclude that "sexually exploited," as used in application note 5 of  2G2.2 to warrant an upward departure, must mean something ____ different than the substantive offenses punishable under that guideline. The government argues that the interpretation of subsection (b)(4) that we adopt will render the pattern-of- activity enhancement virtually useless, and that therefore we should breathe life into it by assigning it some other meaning. For example, a defendant convicted of a trafficking offense, but whose offense involved a pattern of production- related activity sufficient under our interpretation to warrant the enhancement under subsection (b)(4), would, in accordance with the cross reference of 2G2.2(c)(1), be sentenced under the guideline applicable to production offenses, 2G2.1, if his resulting offense level were greater than that under 2G2.2. Section 2G2.1 carries a base offense level of 25, compared to a base offense level of just 15 under 2G2.2; the only way a trafficker could ever receive a higher offense level under 2G2.2 than under  2G2.1 would be if his offense involved distribution (five- level increase; 2G2.2(b)(2)) and the material involved ___ -15- 15 portrayed sadistic or masochistic conduct (four-level increase; 2G2.2(b)(3)), and he received the five-level pattern-of-activity enhancement (bringing his total offense level to 29). It is unlikely, the government argues, that Congress intended the pattern-of-activity enhancement to have such limited applicability, and therefore we should broaden its applicability by construing "sexual exploitation" to include trafficking in child pornography. But there may well be activities that constitute sexual exploitation, as used in subsection (b)(4), that neither implicate the cross reference to 2G2.1 nor clearly rise to the level of sexual abuse.8 And, in any event, while the limited applicability of subsection (b)(4) may be troubling, it would be more troubling to interpret the phrase  ____________________ 8. To offer but a single example, imagine a recipient or sender of child pornography who, in the course of his activities, associates with teenagers who engage in "sexually explicit conduct" as defined at 18 U.S.C. 2256(2)(E) ("lascivious exhibition of the genitals or pubic area of any person"), but who neither has physical contact with them nor photographs them. This offender should not be sentenced under 2G2.1; nevertheless, he has clearly made "improper use" of the minors for his own sexual gratification: he has exploited them. The enhancement also has obvious applicability in cases involving sexual abuse. Section 2G2.2 contains no cross-reference for a defendant whose trafficking offense also involved sexual abuse. While application note 5 permits a sentencing judge to depart upward in such circumstances, and directs his or her attention to the guidelines applicable to sexual abuse in determining the appropriate extent of any departure, subsection (b)(4) substantially increases the sentence of a defendant who has engaged in two instances of sexual abuse without requiring an exercise of discretion on _______ the part of the judge. -16- 16 "sexual exploitation" in a novel manner solely to give it wider applicability. Moreover, the government's solution would result in a subsection that, on its face, enhances punishment for a pattern-of-activity of sexual abuse or exploitation, but that in practice primarily enhances punishment for traffickers. This can hardly be what Congress, or the Commission, intended when they included the phrase "sexual abuse or exploitation." Had they intended such a result, they would have listed the trafficking-type offenses. Both Congress and the Commission had opportunities to make clear that they intended trafficking offenses to be included in "sexual exploitation." Neither chose to do so. Since both Congress and the Commission have distinguished trafficking from "sexual exploitation" previously, we will not now construe that phrase otherwise merely to give subsection (b)(4) wider applicability. Our interpretation of subsection (b)(4) is at variance with the only previous reported decision interpreting the provision. In United States v. Surratt, a _____________ _______ district court suggested in dictum that the pattern of activity enhancement might apply to "a pattern of ordering child pornography through the mail." 867 F. Supp. 1317, 1320 (N.D. Ohio 1994). We think this dictum is simply wrong, for all the reasons discussed above. -17- 17 Having decided that sexual exploitation, as used in subsection (b)(4), does not include the computer transmission of child pornography, we pause to consider whether the record would allow us to conclude that the district court applied the pattern-of-activity enhancement based on at least two instances of offense-related activity other than the receipt _____ or transmission of child pornography. Were we able to reach this conclusion, it would not be necessary to consider whether the activity contemplated by subsection (b)(4) must in fact be offense-related, for the district court's consideration of other sexual abuse or exploitation would be harmless. A careful review of the record, however, provides no basis for such a conclusion. While Chapman, in the course of transmitting photographs to Dan, boasted of sexually abusing children and discussed how he and Dan could commit unspeakable atrocities against a young girl, the government found no evidence that Chapman actually committed or planned to commit such acts. Similarly, although Chapman boasted that the December 29 photograph depicted him engaging in anal intercourse with a young girl, the district court found that that photograph did not even depict a minor, and the government offered no other evidence that Chapman had produced any child pornography. Thus, while there was considerable evidence that Chapman had transmitted child pornography on numerous occasions, and had engaged in -18- 18 detailed conversations about sexually abusing, and murdering, young children, the record contains insufficient evidence to conclude, even on a preponderance standard, that Chapman actually sexually abused or exploited minors in conjunction with his trafficking offense (or even during the time he was an AOL subscriber). Consequently, we have no choice but to consider whether the district court was correct in considering Chapman's past activity in applying subsection (b)(4).9 While we disagree with the Surratt court's _______ dictum, we fully endorse its holding that subsection (b)(4) is inapplicable to past sexual abuse or exploitation unrelated to the offense of conviction. See Surratt, 867 F. ___ _______ Supp. at 1320. In Surratt, the defendant was convicted on _______ one count of receiving child pornography in violation of 18 U.S.C. 2252(a)(2); during a search of the defendant's home, the government discovered other videotapes depicting the defendant sexually abusing his own daughter. Id. Based on ___ this past sexual abuse, the government sought a pattern of  ____________________ 9. The government does not strongly argue that past activity should be considered under subsection (b)(4); it maintains instead that the district court's consideration of Chapman's previous activity was "harmless error if error at all," in light of Chapman's multiple computer transmissions of child pornography. However, because we have ruled that the transmissions themselves do not constitute instances of sexual exploitation and that the record provides no other basis on which the district court could have applied the pattern-of-activity enhancement for offense-related conduct, we must consider whether it was proper to look to previous, non-offense-related conduct. -19- 19 activity enhancement under subsection (b)(4). The Surratt _______ court declined to apply the enhancement, stating: The heading of subsection (b) is "Specific Offense Characteristics." In other words, enhancements included in subsection (b) are available when, as __ part of the offense of conviction, the ____________________________________ defendant undertakes the actions listed therein. The government argues that subsection (b)(4) is different from subsections (b)(1), (b)(2) or (b)(3) because it does not begin with the language "If the offense involved . . . ." This argument is unavailing. The government appears to be suggesting that if the defendant ever engaged in such a ____ pattern of behavior, whether as part of the charged offense or at a completely different time or place, subsection (b)(4) should apply. This Court cannot agree. If the Sentencing Commission had not intended for the language of subsection (b)(4) to be applied only to the specific offense of conviction, that language would not be included in subsection (b), entitled "Specific Offense Characteristics." The government has pointed to no persuasive authority to convince the Court that "specific offense characteristic" means anything other than characteristics specific to the offense of conviction. Id. (emphasis added). ___ We agree with this reasoning. If the Commission intended for subsection (b)(4) to apply to any previous ___ sexual abuse or exploitation, while at the same time placing the provision under "Specific Offense Characteristics," we would expect that it would have taken efforts to resolve this glaring contradiction. It clearly knew how to do so: -20- 20 Application Note 5 states in no uncertain terms that an upward departure is warranted for any instance of sexual exploitation or abuse "whether or not such sexual abuse occurred during the course of the offense."10 Cf. U.S.S.G. ___ 2L1.2(1)-(2) (stating clearly that defendant's base offense level must be increased if defendant "previously" was deported after conviction for felony or aggravated felony). The absence of similar language in subsection (b)(4), combined with the fact that the subsection is classified under the rubric of "Specific Offense Characteristics," compels the conclusion that the application of the subsection does require that the pattern of activity relate to the ____ offense of conviction. III. III. ____ For all the foregoing reasons, we vacate the vacate the ___________ sentence and remand for resentencing. sentence and remand for resentencing. _____________________________________  ____________________ 10. The district court could have invoked this application note and departed upward based on Chapman's previous sexual abuse of minors. -21- 21