**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**James Leroy KEMMISH,
Defendant–Appellee.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Leroy KEMMISH, Defendant–
Appellant.**

Nos. 96–50241, 96–50250.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1997.

Decided July 15, 1997.

Barbara L. Major, Assistant United States Attorney, San Diego, CA, for plaintiff–appellant–cross–appellee.

Christopher P. Tenorio, Federal Defenders of San Diego, San Diego, CA, for defendant–appellee–cross–appellant.

Before: SCHROEDER, FERGUSON, and LEAVY, Circuit Judges.

Opinion by Judge LEAVY; Partial Concurrence and Partial Dissent by Judge FERGUSON.

LEAVY, Senior Circuit Judge:

The government appeals from the sentence imposed on a child pornographer following the defendant's entry of a guilty plea to all six counts of a second superseding indictment, arguing that the case should be remanded for resentencing. The defendant has cross-appealed, arguing that the district court erred by denying his motion to suppress. We affirm the denial of the motion to suppress, but vacate the sentence and remand for resentencing.

## FACTS AND PRIOR PROCEEDINGS

On June 29, 1994, U.S. Customs agents arrested James Leroy Kemmish at the San Diego International Airport after he attempted to smuggle into the United States child pornography videotapes and more than $16,-000 in unreported American currency. An examination of Kemmish's luggage revealed mailing lists, advertisements, and notices for Overseas Male ("OSM"), a Mexico City-based producer of child pornography. Armed with a search warrant, law enforcement officers went to Kemmish's residence the following day. There they found sophisticated video reproduction equipment and several hundred blank videotapes; 204 master videotapes and 332 non-master videotapes, all depicting child pornography; photograph albums and slides containing child pornography; large quantities of OSM advertisements; and mailing supplies.

On November 2, 1995, a federal grand jury handed down a six-count second superseding indictment, charging Kemmish with failing to report transportation of currency in violation of 31 U.S.C. §§ 5316, 5322(a) and 5324(b)(1) (Count I); making a false statement in violation of 18 U.S.C. § 1001 (Count II); advertising to distribute child pornography in violation of 18 U.S.C. §§ 2251(c)(1)(A) and 2251(c)(2)(A) (Count III); transporting child pornography in violation of 18 U.S.C. § 2252(a)(1) (Count IV); reproducing child pornography for distribution in violation of

18 U.S.C. § 2252(a)(2) (Count V); and possessing with the intent to sell child pornography in violation of 18 U.S.C. § 2252(a)(3)(B) (Count VI).

Following the district court's rulings on various preliminary matters, including Kemmish's motions to dismiss the indictment and suppress the evidence, Kemmish pleaded guilty to all six counts of the indictment and consented to forfeiture of his goods pursuant to the terms of a written plea agreement. Although the probation office recommended, and the government acquiesced in, a mid-range sentence of 295 months' imprisonment, the district court departed downward and imposed a sentence of only 63 months. The government has timely appealed from the sentence, and Kemmish has timely cross-appealed from the denial of his motion to suppress.

## ANALYSIS

### I. Motion to Suppress [Cross–Appeal: 96–50250]

#### *Standard of Review*

■ We review *de novo* a district court's denial of a motion to suppress evidence seized in a search. *United States v. Polanco,* 93 F.3d 555, 560 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996). We examine for clear error the court's factual findings underlying that decision. *Id.*

#### *Discussion*

Kemmish argues that the district court erred by refusing to grant his motion to suppress because (a) the warrant was based on an unconstitutional statute; (b) the warrant lacked sufficient particularity; and (c) the affidavit in support of the application for the warrant failed to establish probable cause. We reject each of these contentions.

#### A. Unconstitutionality

■ Kemmish first argues that the warrant was defective because it relied in part on an unconstitutional statute, *viz.,* 18 U.S.C. § 2252. (On December 16, 1992, we declared section 2252 to be unconstitutional, and the Supreme Court did not overturn our decision until November 29, 1994, some five months after the search of Kemmish's home.) *See United States v. X–Citement Video, Inc.,* 982 F.2d 1285 (9th Cir.1992), *rev'd,* 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

In the affidavit submitted in support of the application for a search warrant, Agent Shirley Harris properly informed the magistrate judge of our ruling in *X–Citement Video.* She then proceeded to list the things possessed by Kemmish as well as the items to be searched for. In doing so, Agent Harris identified the items sought as child pornography (defined in 18 U.S.C. § 2256, which was not affected by our ruling in *X–Citement Video* ), all of which constituted obscene material prohibited by 18 U.S.C. §§ 545 and 1462, as well as other provisions of the Child Protection Act of 1984, *codified at* 18 U.S.C. §§ 2251 *et seq.* The district court did not err by rejecting Kemmish's argument on this issue.

#### B. Particularity

■ Kemmish next argues that Agent Harris' affidavit was legally insufficient to support the search warrant because the items to be seized were not described with particularity. The affidavit lists in considerable detail the items to be seized, and does so by using the definitions set forth in the relevant child pornography statutes. Moreover, Attachment 2 to the affidavit further describes those items by using the precise language of 18 U.S.C. § 2256. The district court did not err by finding that the items to be seized had been described with sufficient particularity.

#### C. Probable Cause

Kemmish finally argues that the warrant lacked probable cause because Agent Harris' affidavit failed to establish a sufficient basis to search for child pornography. While we decline to recite the lengthy list of facts set forth in Agent Harris' detailed affidavit, we conclude that the facts as outlined were more than legally sufficient to justify the magistrate judge's conclusion that the objects of the search were probably on the premises at the time the warrant was issued. *See United*

*States v. Baldwin,* 987 F.2d 1432, 1435 (9th Cir.1993) (quoting *United States v. Garza,* 980 F.2d 546, 551 (9th Cir.1992)).

In light of the above, we find no error in the district court's decision to deny the motion to suppress.

## II. Sentencing [Direct Appeal: 96–50241]

### *Standard of Review*

■ We review *de novo* the district court's interpretation of the Sentencing Guidelines. *United States v. Robinson,* 94 F.3d 1325, 1327 (9th Cir.1996). We examine the district court's application of the Sentencing Guidelines to the facts for an abuse of discretion, and review for clear error its findings of fact underlying the sentencing decision. *United States v. Reyes–Oseguera,* 106 F.3d 1481, 1482–83 (9th Cir.1997) (citing *Robinson,* supra).

### *Discussion*

The government argues that the district court erred by (a) failing to include the actual retail value of Kemmish's prior sales of child pornography as "relevant conduct," and (b) refusing to enhance Kemmish's sentence for exhibiting a pattern of sexual exploitation.

### A. Retail Value as "Relevant Conduct"

■ Because all of Kemmish's conviction counts were grouped under U.S.S.G. § 3D1.2(d),[1] the district court was required to consider "all acts ... that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" U.S.S.G. § 1B1.3(a)(2). With respect to the offense of trafficking in material involving the sexual exploitation of a minor, the court was obligated to "increase [the base offense level] by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event less than 5 levels." U.S.S.G. § 2G2.2(b)(2).

The table set out at section 2F1.1 lists nineteen ascending levels based on dollar values ranging from a low of "$2,000 or less" (no increase) to a high of "More than $80,-000,000" (increase by 18 levels). U.S.S.G. § 2F1.1(b)(1). For purposes of section 2F1.1, the probation office arrived at a total retail value of $2,905,255, requiring a 13–level increase. In reaching this figure, the probation office used the following calculations: (1) Kemmish's prior six-month sales figures for OSM ($262,997); (2) the retail value of the non-master videotapes ($30,521, based on OSM's catalogue price list); (3) the value of the blank videotapes ($2,337, based on a total of 17 boxes each containing an average of 50 blank tapes @ $2.75 apiece); and (4) the retail value of the videotapes which could be reproduced from the master videotapes ($2,609,400, based on the government's video expert who testified that each master tape could make at least 100 high quality non-master copies for resale).

The district court ignored the government's calculations as to (1), (2), and (3), and rejected its figure as to (4). The court assigned a retail value of between $120,000 and $200,000 to Kemmish's inventory without explaining how it had arrived at that figure. The court then adjusted Kemmish's offense level upward by only 7 points instead of the 13 sought by the government. *See* U.S.S.G. § 2F1.1 (increase offense level by 7 points for values greater than $120,000 but less than $200,000).

The table at U.S.S.G. § 2F1.1 is nominally concerned with "loss"; however, the Sentencing Guidelines mandate that the figures in that table must "correspond[ ] to the retail value of the material" for purposes of determining the value of child pornography. *See* U.S.S.G. § 2G2.2(b)(2). *See also United States v. Canada,* 110 F.3d 260, 263 (5th Cir.1997) (section 2G2.2(b)(2) determination to be based on retail value of material distributed). Substituting "retail value" for "loss," the relevant application note would read as follows: "[T]he retail value need not be determined with precision. The court need only make a reasonable estimate of the

---

1. "All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: When the offense level is determined largely on the basis of

the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

retail value, *given the available information.*" U.S.S.G. § 2F1.1, comment. (n.8) (emphasis added).

The only evidence offered of a retail value for Kemmish's inventory was supplied by the government. In arriving at a fair market value of some $2.9 million, the government simply took Kemmish's own figures for recent prior sales and current catalogue offerings and applied them to his existing inventory, including the retail value of the tapes to be reproduced from the master videotapes. This approach is both reasonable and logically consistent with the dictates of U.S.S.G. § 2F1.1. *Cf. United States v. Kelly,* 993 F.2d 702, 704 (9th Cir.1993) (interpreting section 2F1.1 as equating "fair market value" with the "retail" price consumers were expected to pay for the illegal goods). Because the factually unsupported figures used by the district court do not meet the criteria of U.S.S.G. §§ 2F1.1 and 2G2.2, while those proffered by the government do, we must vacate and remand for resentencing.

### B.   Pattern of Sexual Exploitation

■   The government next argues that the district court erred by failing to enhance Kemmish's sentence because his conduct as a major distributor of child pornography amounted to a pattern of sexual exploitation of minors. Although the question is one of first impression in this Circuit, we conclude that Kemmish's extensive activities as a trafficker in child pornography do not constitute a pattern of sexual exploitation of minors within the meaning of the relevant law.

Section 2251 of Title 18 generally governs the offense of sexual exploitation of minors.[2] The relevant subsection of that statute reads as follows:

(c)(1) Any person who ... knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering-

(A) to ... distribute, or reproduce, any visual depiction ... involv[ing] the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct[,]

\*       \*       \*       \*       \*       \*

shall be punished as provided under subsection (d).

18 U.S.C. § 2251(c)(1)(A) (in relevant part).

The Guidelines provide that, "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase [his base offense] by 5 levels." U.S.S.G. § 2G2.2(b)(4). " 'Pattern of activity involving the sexual abuse or exploitation of a minor,' for the purposes of subsection (b)(4), means any combination of two or more separate instances of the sexual abuse or the sexual exploitation of a minor, whether involving the same or different victims." U.S.S.G. § 2G2.2, comment. (n.4).

The few reported decisions involving 18 U.S.C. § 2251(c) and U.S.S.G. § 2G2.2(b)(4) have unanimously interpreted the latter as being inapplicable to traffickers in child pornography who are not directly involved in the actual sexual abuse or exploitation of minors. *See, e.g., United States v. Ketcham,* 80 F.3d 789, 794 (3d Cir.1996); *United States v. Barton,* 76 F.3d 499, 503 (2d Cir.1996); *United States v. Chapman,* 60 F.3d 894, 898 (1st Cir.1995). *Cf. United States v. Surratt,* 87 F.3d 814, 819–20 (6th Cir.1996). As the Third Circuit recently noted,

The terms "sexual abuse" and "exploitation" as those terms are used in U.S.S.G. § 2G2.2(b)(4) are terms of art. "Sexual abuse" refers to the conduct covered by U.S.S.G. §§ 2A3.1, 2A3.2, 2A3.3, and 2A3.4. "Sexual exploitation of a minor" refers to conduct covered by U.S.S.G. § 2G2.1.

---

**2.**   Section 2251 is divided into four subsections, (a) through (d). Subsection (a) applies to "[a]ny person" who arranges for a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct," provided the person knows or reasonably should know that the visual depiction has been or will be transported in interstate commerce or through the mails. 18 U.S.C. § 2251(a). Sub-

section (b) applies to parents, legal guardians, or others "having custody or control of a minor who knowingly permit[ ]" such conduct involving the minor while the latter is under their care or control. 18 U.S.C. § 2251(b). Subsection (c), discussed above, involves those who traffic in child pornography. Subsection (d) sets forth the range of punishments for violations of section 2251(a)—(c).

Sections 2A3.1, 2A3.2, 2A3.3, and 2A3.4 of the Guidelines set out the offense levels for the various forms of "sexual abuse" proscribed in §§ 2241 ("Aggravated sexual abuse"), 2242 ("Sexual abuse"), 2243 ("Sexual abuse of a minor or ward"), and 2244 ("Abusive sexual contact") of Title 18 of the United States Code. These offenses make it criminal for anyone to engage in sexual activity with another under stipulated circumstances or to cause or permit another to engage in sexual activity under stipulated circumstances.

Section 2G2.1 of the Guidelines sets out the offense level for the various forms of "Sexually Exploiting a Minor" proscribed in subsections 2251(a) (employing, inducing, coercing or transporting, etc., a minor "with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct"), § 2251(b) (as a parent, guardian or person having custody of a minor, permitting the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction), and § 2251(c)(1)(B) (seeking or offering by advertisement participation in any act of sexually explicit conduct with a minor for the purpose of producing a visual depiction) of Title 18 of the United States Code. These offenses make it criminal to engage in stipulated activities in connection with the *production* of materials containing visual depictions of sexually explicit conduct involving a minor.

\* \* \* \* \* \*

None of these Guidelines refer to the possession, transportation, trafficking, receipt, reproduction, or distribution of child pornography as "sexual abuse" or "exploitation of a minor." ... Thus, a defendant who possesses, transports, reproduces, or distributes child pornography does not sexually exploit a minor even though the materials possessed, transported, reproduced, or distributed "involve" such sexual exploitation by the producer.

*United States v. Ketcham,* 80 F.3d at 794 (emphasis in original).

On November 1, 1996, the Sentencing Commission adopted the above reasoning by amending Application Note 1 to U.S.S.G. § 2G2.2(b)(4). That Note now reads, in relevant part, " 'Sexual abuse or exploitation' does not include trafficking in material relating to the sexual abuse or exploitation of a minor." *See* U.S.S.G. § 2G2.2(b)(4), comment. n. 1 (Nov.1996) (Appendix C, amendment 537).

In the absence of any showing of a more direct involvement on Kemmish's part in the sexual abuse or exploitation of minors, we conclude that the 5–level sentence enhancement provided by U.S.S.G. § 2G2.2(b)(4) does not apply to Kemmish's trafficking in child pornography.

### CONCLUSION

The district court's denial of Kemmish's motion to suppress is AFFIRMED. The sentence imposed is VACATED and the case REMANDED for resentencing.

FERGUSON, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion except with regard to section II. B., "Pattern of Sexual Exploitation." I disagree with the majority's analysis of that issue because as the sole U.S. distributor of OSM's pornography and a businessman in close contact with the pornography producer, Kemmish's role was crucial to the ongoing success and viability of the business. As such, he was certainly "engaged in a pattern of activity involving the sexual abuse or exploitation of" minors, and therefore deserved the five-level enhancement under U.S.S.G. § 2G2.2(b)(4). The facts of this case are far more egregious than the typical child pornography trafficking or distribution case and therefore the district court should have considered departing from the usual conception of "distributor" in analyzing the applicability of the guideline. *See* 1995 U.S.S.G. ch. 1 pt. A intro. comment. 4(b).

This is a question of first impression for the Ninth Circuit. In addition to being merely persuasive authority, none of the case law cited by the majority opinion involved traffickers of child pornography who were essential to the success of a pornography

operation as Kemmish was. *See United States v. Chapman,* 60 F.3d 894, 895 (1st Cir.1995) (defendant's conduct relevant to the § 2G2.2(b)(4) enhancement consisted of sending four photographs via a computer information network); *U.S. v. Surratt,* 87 F.3d 814, 819 (6th Cir.1996) (Sixth Circuit refused to apply the enhancement because all evidence of Surratt's abuse and exploitation of minors was unrelated to the offense charged, that is, the receipt of sexually explicit depictions of minors); *United States v. Barton,* 76 F.3d 499, 501 (2d Cir.1996) (district court explicitly noted that defendant "was not involved in the commercial distribution or production of child pornography"); *and United States v. Ketcham,* 80 F.3d 789 (3d Cir.1996).

Kemmish's participation in the Overseas Male pornography business far exceeds that of any trafficker heretofore considered with regard to § 2G2.2(b)(4) by a court of appeals. Kemmish sold hundreds of video tapes for hundreds of thousands of dollars in a mere six month period. At the sentencing hearing, the government proffered that the photographer of the child pornography possessed and sold by Kemmish lived in Mexico. The proffered evidence indicated that Kemmish was in frequent contact with the photographer: he had made numerous trips to Mexico and had had substantial telephone and fax contact with the photographer in Mexico.

Kemmish possessed over three hundred and fifty videotapes depicting child pornography, many of which involved children under the age of 12. Two hundred and four of the tapes were full length "master quality" videotapes which could be used to create hundreds of copies each. Kemmish had twenty-four video recorders connected together for mass reproduction of the tapes and hundreds of blank tapes. He was the sole distributor of OSM's materials in the United States and maintained a customer mailing list of more than 2,500 names.

The tapes in Kemmish's possession depicted 600 to 800 children engaging in sexually explicit conduct, including sadistic or masochistic conduct and other depictions of violence. By his own records, Kemmish sold these tapes to hundreds or thousands of people, who in turn viewed and/or distributed them. This is not a case where Kemmish simply distributed the video tapes after they were made; the tapes simply would not have been produced or made in such quantity without Kemmish. This conclusion is borne out by the Government's proffered evidence indicating that OSM had been unable to continue distribution of its "little boy" line after Kemmish's arrest. Kemmish was clearly crucial to the operation.

The majority correctly points out that the Sentencing Commission Commentary supports the conclusion that the § 2G2.2(b)(4) five-level enhancement should not be applied to traffickers and distributors who were not physically involved in the production of child pornography. U.S.S.G. § 2G2(b)(4), comment. n. 1 (Nov.1996) (Appendix C, amendment 537). However, the Sentencing Commission Guidelines' note did not contemplate the situation, such as this one, where a trafficker or distributor is necessary and central to the viability of a child pornography business and therefore the creation of pornography involving the physical abuse and exploitation of children. Because Kemmish was clearly "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor," he should have been given the increase under § 2G2.2(b)(4).

Although commentary accompanying the Sentencing Guidelines is to be given controlling weight unless it is plainly erroneous or inconsistent with the guideline, *Stinson v. U.S.,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993), courts also have discretion to depart from the guidelines in unusual or atypical cases. *Koon v. U.S.,* —— U.S. ——, ——, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996). The Sentencing Commission did not intend that the guidelines be applied mechanically:

> When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b).

The Commission adopted this departure policy because it recognized the difficulty in prescribing "a single set of sentencing guidelines to encompass the vast range of human conduct potentially relevant to a sentencing decision." *Id.* The differences between a trafficker of child pornography who sends several photographs to a fellow pedophile and the sole distributor of a child pornography video line whose video tapes and equipment have reproductive capabilities with a retail value of over two million dollars are just the sort of differences contemplated by the Commission's departure policy. Although this case does not involve departure from a guideline, but rather interpretation of a guideline, the principles underlying the Commission's departure policy also apply here. These principles support interpreting the guideline as allowing for a five-level enhancement in atypical cases where an individual distributor is necessary to a business which engages in the sexual abuse and exploitation of hundreds of children.[1] In essence, Kemmish was *not* a mere distributor. Rather, his involvement was extensive enough—he did everything but photograph the children—that he is better characterized as a producer of child pornography. Therefore, the commentary accompanying § 2G2.2 should not prevent the district court from imposing the five-level enhancement for Kemmish's pattern of activity involving the sexual abuse and exploitation of the child victims of OSM's pornography business. I would remand the case for resentencing to allow the district court to apply a five-level enhancement under § 2G2.2(b)(4).

---

1. We review this decision by the district court *de novo*, rather than for an abuse of discretion, because the district court decided that the guideline did not include distribution as exploitation as a matter of law. *See U.S. v. Robinson,* 94 F.3d 1325, 1327 (9th Cir.1996) (we review interpretation of the Sentencing Guidelines *de novo* ).

