141 F.3d 1181
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellant,
v.
Donald MONACO, Defendant-Appellee.
 No. 97-30212.
D.C. No. CR-97-00015-JWS.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 2, 1998.
Decided April 1, 1998.
 
 1
 Appeal from the United States District Court for the District of Alaska John W. Sedwick, District Judge, Presiding.
 
 
 2
 Before ALARCON and HAWKINS, Circuit Judges, and BREWSTER,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 The United States appeals from the order granting Donald Monaco's motion to suppress evidence obtained as a result of the search of Monaco's fanny pack. The Government contends that the district court erred because Officer Kirkley had reasonable suspicion to squeeze Monaco's fanny pack. We have jurisdiction pursuant to 18 U.S.C. § 1371. We reverse because we conclude that under the totality of the circumstances, Officer Kirkley had reasonable suspicion to squeeze Monaco's fanny pack.
 
 
 5
 * The Government argues that Officer Kirkley had reasonable suspicion to squeeze Monaco's fanny pack because the circumstances demonstrated that Monaco may have been armed and dangerous. Monaco had been parked for six hours in an industrial warehouse parking lot, with the car engine running, and appeared to be under the influence of a narcotic substance. Moreover, Monaco was wearing a fanny pack, which Officer Kirkley knew from his experience often concealed weapons. At oral argument, the Government abandoned its alternative argument that, because Officer Kirkley had probable cause to arrest Monaco for being under the influence of a controlled substance, the weapon concealed in Monaco's fanny pack would have been inevitably discovered.
 
 
 6
 We review motions to suppress de novo. See United States v. Kemmish, 120 F.3d 937, 939 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1087, 140 L.Ed.2d144 (1998). The district court's underlying findings of fact are reviewed for clear error. See id. "We determine whether there was a founded suspicion for a pat-down search based on a totality of the circumstances." United States v. Salas, 879 F.2d 530, 535 (9th Cir.1989).
 
 II
 
 7
 A police officer may stop and frisk a suspect when the "officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that persons with whom he is dealing may be armed and presently dangerous...." Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (emphasis added). The pat-down is limited to a search for weapons, and the purpose of the limited search is to allow officers to conduct investigations without fear of violence. Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Accordingly, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27.
 
 
 8
 Officer Kirkley's testimony concerning the facts prior to the pat-down demonstrate that it was reasonable for Officer Kirkley to believe that Monaco may have been armed and dangerous. At the time of the incident, Officer Kirkley had been a police officer for almost thirteen years. He was working alone when he answered a dispatch call reporting that a man had been "nodding off" in his vehicle from about 8:00 A.M. until 2:00 P.M.. Officer Kirkley testified that "I believe [the term nodding off] is used specifically for heroin users."
 
 
 9
 Officer Kirkley's initial perception of Monaco, who was slumped forward against the wheel of his car, was out of the ordinary. Officer Kirkley testified that, in his experience, the "fact that [the car] had been there since eight A.M. was very unusual." He also stated that a report from a dispatcher regarding a "man slumped over a wheel" usually applied to a driver that has "pulled off to the side of the road" because of fatigue or too much alcohol. This call was unusual, however, because the driver had been parked in a "more or less industrial" area for six hours. The parking lot where the car was parked was populated by several "wrecked, junk-style vehicles." Officer Kirkley further testified that he had never before encountered a situation where a person had his or her head on the steering wheel while simultaneously depressing the accelerator causing the engine to race. He stated that "usually when someone is asleep in a vehicle, they're not doing any actions with their foot that would depress the accelerator."
 
 
 10
 Throughout Officer Kirkley's encounter with Monaco, more bricks were added to the foundation of suspicion that Monaco might be armed and dangerous. After tapping on the passenger window and getting Monaco's attention, Officer Kirkley asked for identification. Monaco retrieved his United States passport from a briefcase on the back seat. Officer Kirkley considered it unusual that Monaco offered him a passport, rather than a driver's license. It was the first time in his experience that a detainee had done so. Moreover, after observing Monaco's lethargic reactions, Officer Kirkley concluded that Monaco "was under the influence of something other than just being tired." Because he did not smell any alcohol, Officer Kirkley determined that consumption of an intoxicating beverage was not the cause of Monaco's symptoms.
 
 
 11
 While examining the passport, Officer Kirkley observed what appeared to be a holster sticking out from under Monaco's jacket as well as a fanny pack worn in front of his body. Officer Kirkley testified that this caused him concern because he thought that the holster or the fanny pack might contain a weapon. He stated that "[f]rom my own experience on the street and personal use myself, I know that weapons are often carried in [fanny packs]."
 
 
 12
 Officer Kirkley drew his weapon, placed it in the guard position, and told Monaco to put his hands on the steering wheel. Officer Kirkley lifted Monaco's jacket and discovered that the item that appeared to be a holster was really a leather tool pouch. Officer Kirkley then holstered his weapon and directed Monaco to step out of the vehicle and put his hands behind his neck. Once Monaco was in this position, Officer Kirkley gripped Monaco's hands with his right hand and squeezed the front of the fanny pack with his left hand. Officer Monaco felt "[a] hard object that was shaped similar to a handgun."
 
 
 13
 When considered separately, some of the circumstances observed by Officer Kirkley probably would not demonstrate reasonable suspicion that Monaco was engaged in criminal activity and may have been armed and dangerous. Many people wear fanny packs; people even nap in their cars with the engine running when the weather is cold, as it was in this case. These facts, standing alone, apparently caused the district court to conclude that, "[if the search of Monaco were proper, it would be proper to place virtually any citizen into such a humiliating 'patdown' position if he were found dozing in a vehicle and awakened in a lethargic condition."
 
 
 14
 The district court erred, however, in viewing each of the facts relied upon by Officer Kirkley in isolation. We are persuaded that the totality of the circumstances demonstrate that a reasonable suspicion justified the pat-down of Monaco's fanny pack. See United States v. Sokolow, 490 U.S. 1, 9-10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (individual instances of innocent conduct taken together may amount to reasonable suspicion). Monaco was not "virtually any citizen ... found dozing in a vehicle and awakened in a lethargic condition." Rather, Monaco was nodding off in a car for six hours in the parking lot of an industrial area, not by the side of the road where a tired driver might ordinarily pull over. He had been at the location between 8:00 A.M. and 2:00 P.M., which are also unusual hours for a motorist to be napping. He was slumped forward with his foot on the accelerator causing the engine to race, and upon closer observation by Officer Kirkley, he appeared to be under the influence of some substance other than alcohol.
 
 
 15
 Because of these unusual circumstances, it was within Officer Kirkley's purview to conclude that Monaco was not just any citizen with a fanny pack. Rather, these facts were sufficient to create a reasonable suspicion, when viewed in light of Officer Kirkley's experience, that Monaco might be carrying a weapon in the fanny pack. See United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (inferences or deductions apparent to trained law enforcement officers may be considered). For example, we believe a reasonable officer would have been suspicious of the fact that Monaco kept his passport in his briefcase, and not the fanny pack where most persons carry important objects or documents. A reasonable officer would suspect that the fanny pack was worn in front by a suspected user or distributor of a controlled substance to make a concealed weapon readily accessible for use in case of an attempted robbery or a threatened arrest.
 
 
 16
 Officer Kirkley had reason to believe that his safety was in danger. The pat-down was limited to the one item Officer Kirkley suspected might contain a weapon.
 
 
 17
 REVERSED.
 
 
 
 **
 Honorable Rudi M. Brewster, United States District Judge, for the Southern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3