**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul VILLALBA, etc., Defendant–
Appellant.**

No. 05–50160.

United States Court of Appeals,
Ninth Circuit.

Submitted March 9, 2006.*

Filed June 1, 2006.

Mark A. Young, USLA—Office of the U.S. Attorney, Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Ellen M. Barry, Esq., Law Offices of Ellen M. Barry, Los Angeles, CA, for Defendant–Appellant.

Before: WARDLAW and RAWLINSON, Circuit Judges, and CEBULL,** District Judge.

## MEMORANDUM ***

Defendant appeals his conviction on drug charges and argues that the district court erred in denying his motion to suppress drugs and other evidence discovered by police when they executed a search warrant at his residence. We affirm.

Violations of Rule 41(d) require suppression only if there was a "deliberate disregard of the rule or if the defendant was prejudiced." *United States v. Gantt,* 194 F.3d 987, 1005 (9th Cir.1999). Where the agent executing the warrant is unaware of the Rule but acts in good faith in executing what he or she believes to be the Rule, he

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

** The Honorable Richard F. Cebull, United States District Judge for the District of Montana, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

or she has not acted in deliberate disregard of it; thus suppression is not appropriate, assuming that the officer's actions result in no prejudice to the defendant and that the error does not rise to the level of a constitutional violation. *United States v. Williamson,* 439 F.3d 1125 (9th Cir.2006).

This case involved a violation of Rule 41(d) because the officers entered the residence prior to obtaining a search warrant, however, the officers did not commence the search until the warrant had been issued. The actions of law enforcement did not amount to a deliberate disregard of the rule and Defendant has not shown that he was prejudiced. It cannot be said that the search would not have occurred or that the cocaine and money would not have been seized had the officer provided the warrant earlier.

When considering the totality of the circumstances in this case, and taking into account the need for notice and the practical realities facing police officers endeavoring to perform their job effectively, as recommended by *United States v. Martinez–Garcia,* 397 F.3d 1205 (9th Cir.2005), it was very reasonable for the officers to commence their search while waiting for the Spanish-speaking agent to deliver the warrant. Following issuance of the three search warrants, law enforcement was notified and arrangements were immediately made for delivery at the subject residence. The officers did not commence the search until they had received notice that the warrants had been signed. **AFFIRMED.**

WARDLAW, Circuit Judge, dissenting:

I respectfully dissent. Even if the individual officer in this case acted "in good faith in executing what he or she believe[d] to be the Rule," *United States v. Williamson,* 439 F.3d 1125, 1134 (9th Cir.2006), I

must conclude that the regular practice of the Glendale and Los Angeles Police Departments to begin searches prior to the arrival of the warrant is a deliberate disregard of Federal Rule of Criminal Procedure 41 and therefore warrants suppression.

In *United States v. Gantt,* 194 F.3d 987 (9th Cir.1999), we stated that "[a]bsent exigent circumstances, Rule 41(d) requires service of the warrant at the outset of the search on persons present at the search of their premises." *Id.* at 1001; see also *Williamson,* 439 F.3d at 1132 (reaffirming the viability of the *Gantt* rule).[1] In *Gantt,* we emphasized the constitutional and social values served by providing the warrant up-front to the owner of the location to be searched. That procedure reassures the owner of the legality of the search and makes it less likely that he will resort to confrontation and violence. *Id.* at 1001–02. Furthermore, requiring a copy of the warrant to be present ensures that the officers conducting the search know the scope of the approved search, while enabling an owner to "calmly argue that agents are overstepping their authority." *Id.* at 1002; see also *Groh v. Ramirez,* 540 U.S. 551, 561, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

Villalba and his family were denied these protections entirely. The search of Villalba's home was quite different than the one we recently upheld in *Williamson.* In *Williamson,* the officers possessed a copy of the warrant when they entered the family home; they displayed it to the homeowners prior to the beginning of the search (though they did not hand it over); and they discussed with the homeowners the purpose, nature, and limited scope of the search. 439 F.3d at 1129–30. Villalba received no such assurances. Indeed, Glendale Police Officer Mark Hess testi-

---

**1.** Rule 41(d) has since been renumbered 41(f)(3). *See* Fed. R. Crim. P. 41 (2006).

fied that the officers' original statement to the Villalbas that they possessed a warrant, at 9:30 p.m., was in fact a misstatement. The warrant would not issue for another hour; the claim of an existing warrant was a ruse to gain entry to the home for protective reasons. When the warrant did issue at 10:30 p.m., the officers immediately began searching, even though Officer Hess admitted that they did not know precisely what the warrant authorized. They did not attempt to explain the search to Villalba, and they did not make the warrant available to Villalba until it arrived ninety minutes after the search had begun. Villalba was forced to "suffer the invasion while still in doubt of its legality," *Gantt*, 194 F.3d at 1002, precisely what we sought to avoid in establishing the prophylactic rule.

Nor is this a case where exigency demanded that the search begin before the warrant arrived or was served. *See id.* at 1001 (excusing provision of warrant if exigent circumstances are present); *United States v. Mann*, 389 F.3d 869, 875 (9th Cir.2004), *cert. denied*, 544 U.S. 955, 125 S.Ct. 1719, 161 L.Ed.2d 537 (2005) (same). The officers would not at all have been prejudiced by waiting up to 90 minutes for a copy of the warrant to be delivered. In fact, the officers had already secured the Villalba home before the warrant was approved.

The majority's further suggestion that it was reasonable to commence the search while waiting for a Spanish-speaking agent to arrive is a red herring. In *United States v. Martinez–Garcia*, 397 F.3d 1205 (9th Cir.), *cert. denied*, —— U.S. ——, 126 S.Ct. 241, 163 L.Ed.2d 222 (2005), the case cited by the majority, the officers possessed an English language warrant and tried to serve it on the homeowners before they began the search. *Id.* at 1210. When they learned that the owners did not

speak English, they began their search while they waited for a translator to arrive. *Id.* at 1214. In the case *sub judice*, the officers did not possess an English language warrant when they began the search, nor does the record indicate that a Spanish-speaking agent was summoned to help explain the warrant. That the officer who delivered the warrant, L.A.P.D. Officer Maria Barrera, may speak Spanish was not at all relevant to the delay; in her affidavit, Officer Barrera stated that she never even read the search warrant to Villalba, in Spanish or English.

It is no defense for the United States to fall back on the existence of a policy within the L.A.P.D. or the Glendale Police Department to begin searches as soon as a warrant issues but before it arrives. This local policy that the majority countenances as "reasonable" is one that unnecessarily defies the binding precedent of this circuit. If it is county policy to instruct officers that they may ignore the requirement to serve a warrant on owners present on the premises, then it would seem the county is making a " 'deliberate' or 'conscious' choice to fail to train its employees adequately" and might face *Monell* liability. *See Mackinney v. Nielsen*, 69 F.3d 1002, 1010 (9th Cir.1995) (quoting *Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

We have in the past excused officers' failures to comply with Rule 41 and the *Gantt* requirement because of their individual ignorance of the law and their "good faith" behavior. *See Williamson*, 439 F.3d at 1134; *United States v. Smith*, 424 F.3d 992, 1007 (9th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1477, 164 L.Ed.2d 257 (2006). This was tolerable for a single official when the search occurred prior to the *Gantt* ruling, as in *Smith*, 424 F.3d at 1007, or in the years immediately following *Gantt's* clarification of the law, *see Wil-*

*liamson,* 439 F.3d at 1134. Here, however, five years after our ruling in *Gantt,* we are confronted not with the ignorance of a single officer but with a department-wide policy of flouting Rule 41 and the express guidance of Ninth Circuit precedent. I find it impossible to square this continuing willful ignorance of the law on the part of police departments with our rule that "deliberate disregard" of Rule 41 warrants suppression. *Gantt,* 194 F.3d at 1005. The majority ignores this obvious conflict, reducing *Gantt* to mere words and leaving it a hollow shell of a rule. Department-wide practices that ignore *Gantt* cannot be anything but "deliberate disregard" of the requirements of Rule 41. Therefore, I dissent.